Our next case on the call of the docket is agenda number 9, excuse me, case number 112-898, Brandon Wilson v. Edward Hospital. Counsel for the appellant, please proceed. Good morning, your honors. Michael Rasek. I'm here on behalf of the plaintiff's appellants, the Wilson family. This is, of course, before this court, also on a certified question. The question involving the difference between apparent agency and actual agency. Essentially what happened was the trial court granted summary judgment on the question of actual agency. The plaintiff took a voluntary dismissal, refiled using apparent agency. The trial in the appellate court said that we had split a claim at that point. And as I understand the question before this court, we have spent a great deal of words on a few words, apparent and actual agency, and whether that was or was not splitting a claim. To address that, I'd like to go back and start with an old case, the Hull case. Hull v. City of Chicago, because I can only do this by analogy. Hull was the case where the plaintiff alleged that the city had negligently designed the roadway and had left the debris on the roadway. It's a 304A case. The trial court dismissed the negligent design case, and that was given 304A language, 304A findings, and went up on appeal. The appellate court dismissed the case and said, no, you don't have, you haven't gotten rid of a branch of the claim here. You've only gotten rid of part of the claim. And we believe, because there were other allegations on which the city's liability, whether or not it was negligent, could be determined. We believe we have the same sort of situation here. When the court got rid of, tossed out, or closed out a granted summary judgment on the actual agency, we still have another part of the agency question, and that's whether or not there was apparent agency. And in looking at it, I tried to look at it in terms of stairwells or stairways, and maybe I didn't make the analogy quite clear. Maybe I should have said, when we look at a case, we're looking at floors, different levels of floors. There are different, there are ways to get from the first, we have to get to the first floor, which in this case would be the agency issue. If I carry a slide, the second floor would be duty, third floor would be misconduct fault, fourth floor would be injuries caused by the conduct. Between each floor, you don't have just one stairway, you've got multiple stairways. I don't have to prove every act of negligence, as sort of came up in the Hull case, in order to get past the duty. I don't have to prove every injury to get to the entry floor. I should have to prove every possible agency combination to get to what I call the principal floor. The question here is whether or not, we keep talking about apparent agency and actual agency. The question is, was the hospital the principal for these doctors? When you look at it that way, I've got, it's as if I've got to go from the base floor to the first floor, two different stairways. Aside from the stairway argument, aren't there distinct elements of these two? It's clear that the proofs for apparent agency and actual agency are different. That's why I use the Hull analogy, the way that you prove the Hull analogy, highway design and debris on the roadway are quite different proofs. In almost any case that you have, for each element of the claim, you have different proofs. It's always going to be that case. But the question isn't whether you have different elements, I don't believe. The question is, is the issue of whether the hospital is the principal, was that still around after the actual agency part was removed from the case? And the answer is, it is. In keeping with that theme, as I understand part of your argument is that apparent agency and actual agency are theories of recovery rather than actual claims. Is that fair? I would even go one step back. There are steps on the way to a theory of recovery, similar to multiple allegations of negligence within a single account, as in Piagentini. And as we look at Hudson, for example, just tell me the difference between the theories of recovery of apparent and actual agency and the theories of recovery of negligence and willful and wanton conduct. In the Hudson matter. Because you're saying there's a difference. I believe there is. I believe the question here is, the question in Hudson wasn't simply a question, as I understood it, of fault. You can have different types of fault and they're different. Here we're talking about whether or not somebody is a principal and there are different routes to showing somebody is a principal. That's about the only way that I can parse those two out. I'd have to compare it to willful conduct and a negligent conduct case. If you have that, you have two kinds of fault involved. Each one would generally be a separate claim. There's a separate path to the end of the road for a claim based on willful conduct and a claim based on negligence. I'm not sure I understand either. So I'm going to ask the same question maybe in a different way. I think what we're struggling for is to try to define the word claim. We use the word claim and we apparently are using it in lots of different ways. To start with, Ryan, we have, it appears to be one, I don't want to use the word claim, but I don't want to use the word theory either, but fraudulent misrepresentation and different types of recovery, one under the statute, one common law. In Hudson you have wrongful death, one event, and two types of, I'm not sure how to call it, negligence and willful wanton, the same elements plus willful wanton has one more. And then here we have professional negligence, one kind of negligence, and based on vicarious liability with what seems to be two different alternative elements. Each one of those sounds different. There's something a little bit different about each one of those breaking these ideas apart. You've got the damages under the statute versus the common law. You have two different types of counts that could have similar, basically the same elements, but willful wanton has an additional element. And then you have two different theories of vicarious liability. They sound similar, but they also sound different. So from all of these, can you help us write a sentence that says, a claim is. How do you define a claim, given that history? From my perspective, and I agree with almost, I agree with the court's analysis. I could disagree with how those cases have been described. I understand that. It depends on, I hate to say this, it depends on what you call a claim. A claim is an operative set of facts that allows you to bring a cause of action. That's what Dugan said. I think that's what Black's Law Dictionary says. In willful and wanton and negligence, you have a claim for, you have an operative set of facts that lets you bring a claim for willful and wanton and an operative set of facts that lets you bring a claim for negligence. You do not have an operative set of facts that lets you bring a claim for agency. Agency is simply not a claim, and that's where I think I end up coming back to logically. Agency is not a claim because agency does not allow me to sue anybody. Agency is simply a means by which somebody else against whom a claim has been filed is responsible for that party's fault. If the court is going to determine that actual agency and apparent agency represent two different kinds of claims, then my position is substantially weakened, and I have to admit that. I can't avoid the obvious. And so the question I'd like the court to come back to, what your Honor suggested, what is a claim and how this court resolves this. The courts have said that willful and wanton and negligence, I think they've said they're two claims. They're surely capable of being given 304A status. I don't know that anybody's quarreled with that. If you can get 304A status because the negligence count is gone, you've disposed of an entire claim. The case that's left when the negligence count went in something like Ryan or Hudson, the case that's left, it's still a full case. When the branch of agency is gone here, we still have the same claim left. We have a derivative claim. It's still based upon what the doctors did allegedly wrong. How about in Ryan? I don't recall, I should know this, but fraudulent misrepresentation, but the statutory basis for damage was dismissed or some judgment on that, right? Should there have been 304A language in that? It was denied, right? I believe it was denied. In that case, because there's a statutory cause of action, not a step along the way, because there's a statutory cause of action, if I use the negligence and willful and wanton analogy, that would seem to be a separate recovery. The difference between negligence and product liability, if a negligence count goes out, you can get 304A language because you've disposed of a branch of the action. I keep equating, I think, in my brief, a branch of the action with the word claim. And so if you have a statutory cause of action, you should have, that's a separate claim. It typically has a separate element to it. You have to breach something that the statute did, common law for negligence, a different branch of common law for willful and wanton. But the question gets back to do we have a claim, did we ever allege a claim for agency? We have a claim of agency because it's in there, because everybody uses the word claim. But I put to the court that when you look at the real definition of a claim, a parent agency is not a claim. It's simply a step on the way to getting to the end of the road. Any more than in a negligence count, Pugentini, for example, the plaintiff lost a couple of elements of his product liability case and his negligence case. But the case went on on the same theory of fault, and the case goes on here on the same theory of fault, what the doctors did. The only question is, was the hospital principled? The hospital was a principled under a common law theory before the summary judgment on actual agency. The hospital was a principled under a common law theory after the summary judgment. Nothing changed. That is the best way I can put it to the court. Is this an appropriate use of summary judgment to dispose of whatever, you don't want to call it a claim, but whatever it is? Is that an appropriate use of summary judgment? It was appropriate to dispose of the issue at that time. I can't quarrel with that. The evidence was that these doctors are not the employees and not under the control of the hospital. So they had to be out of the case. I don't know how they would be disposed of other than summary judgment. I would like to find a way to tell this court, but I can't do it. At least you could strike it. But the question was one of evidence, and we didn't have any evidence to show they were actual agents. The word judgment seems to have some, and I think the statute talks about claim in terms of summary judgment. Summary judgment. So there was judgment on a claim. But, again, the question is, the word claim is used with so many meanings. When this court issued Rhine and this court issued Hudson, it talks about splitting a claim. Is that what it meant when we're talking about claim in terms of res judicata? A claim is something you can execute on. I'm sorry. A judgment is something you can execute on. My opponent made the point where you can't execute when the defendants win. No, but something is gone from the case. A claim, a whole ability to pursue the case to judgment disappears if the defendant gets judgment. Ms. Ressa, there wouldn't be any way for the defendant in this case to say, okay, there was summary judgment granted on the actual agency claim, right? Yes, sir. Right? So you come in with your apparent agency claim. There would be no way for the defendant to say, oh, that was all part of the same claim. I mean, he wouldn't be able to say that. He said summary judgment has already been granted to apparent agency. Obviously it hasn't, right? That's correct. It's another theory. That's correct. So I know the semantics that we're talking about, but from the other standpoint, from looking at it, they couldn't come in and say, hey, that one's already been decided. It's all part of the same claim. They could not. But the problem is it's not part of the same claim in the sense of a claim as being a series of facts that lets me obtain a judgment. It's a step on the way to my being able to prove a judgment, just like removing one of two allegations of negligence from my count. That's a claim that's gone, too. A claim that I was going too fast for conditions is different than a claim that I was driving while intoxicated, and yet summary judgment could be granted on one. I wasn't drinking that day. The same problem would occur. Nobody could come in and say, well, you didn't get rid of it. That claim isn't there. That's the analogy that I believe fits best because you break a claim into its components. Usually it's the components in a tort claim, duty, violation of the duty of the standard of care and cost. Here, when you have respondeat superior vicarious law, but you've got one more level in there. And that's all it is. Our point is, as the plaintiff here, is that we would only have claim splitting if somebody got rid of the entire common law-based principal allegation, that the hospital is the principal for these people. I can't think of a way that you could take agency and bring it in two entirely different forms. Actually, I could. There could be statutory agency. There are instances where there's statutory agency. Would that be a separate branch of agency? Would we have split a claim then because it's so distinctly different? I don't know. Frankly, until I just stood here, I hadn't thought about that. It's apparent that the court understands our position, and I could use more examples, but I would simply be using more examples. And basically it comes down to what do we mean by a claim for purposes of race judicata, Ryan and Hudson? And I think it means something a little bit different and a little bit stricter than what most of the opinions of the court have just talked about, unless the court has further questions at this point. I am finished with this part. Thank you. Thank you, Mr. Rastak. May it please the Court, Hugh Griffin for the defendant, Applee, Edward Hospital Counsel. When I sat down last night, I tried to ask myself the questions that Justice Tice asked. In this context of registered judicata and claim splitting, how do we define separate claims? And here's what I found. Looking at Heinrich versus Peabody, which is your decision, Cunningham, the Gantt, I think it's Gantt, is an appellate court decision that plaintiff says he agrees with, says that if the basis or elements of recovery are different than the remaining claims, then we have separate claims. And as Justice Freeman pointed out, the elements of actual agency are totally different from apparent agency, as you could get. Actual agency requires either an employee-employer relationship or an actual right to control the purported agent, which relies on the doctrine of respondeat superior. On the other side of Freeman, isn't the plaintiff's claim here one of negligence and actual authority and apparent authority, just different theories of establishing negligence? He's got two. Well, negligence of the physicians, that's out here, that's a prerequisite for him to recover, but that doesn't give him any right against the hospital. I mean, to prove the negligence of the physicians, he doesn't get to the hospital unless he can also prove one of his two theories or claims of agency, actual agency or apparent agency, and they're night and day. I mean, apparent agency, you start from the premise that there is no employment relationship. It's an independent contractor. You look to conduct of the purported principle that he hold out the doctor as the agent, was the reliance by the patient, separate jury instructions, as we set forth in our brief, lengthy as to each one. I mean, this is way beyond Hudson, if you will, which is all about, which is simply the very same conduct, failure to send out an appropriate life support vehicle, same facts. No, really, the only difference is in one case we're alleging negligence, the other we're saying, hey, it's a little degree more than that, it's wolf one one. And in that case, obviously, you held those were separate claims. Within a cause of action, parties have many theories and claims. That's what Rain makes clear. There was a rescission count, a breach of fiduciary duty. There was fraud, failure to register the securities, all kinds of theories and claims. And what you held there is if you go to judgment on one of those, one of them within your cause of action, because, I mean, identity of cause of action, that's a premise for res judicata, so that's a given. But if you go to judgment on one of those claims and involuntarily dismiss and make it final and you refile, then you have your res judicata and your claim splitting doctrines barring that. And to me, this is a very strict. Can I take a step back from that and just ask you a question that I know these issues have been much discussed in this court. I'm not sure you've had an opportunity to respond to an issue that was raised in some of the earlier cases. And that involves the fact that this court's jurisprudence is certainly in this area, has been certainly influenced by the restatement of judgments. And a portion of the restatement of judgments, Section 20, subsection F, specifically seems to deal with this problem and says that res judicata is not applicable when a plaintiff voluntarily dismisses without prejudice and remains free to prosecute any part of his claim. So the restatement seems to address this very situation, doesn't it? And if not, why? Well, you know, Hudson hasn't been challenged here in this appeal. I mean, that was the argument made in Hudson. So we should reject that portion. I mean, this section, we should reject this portion of the restatement. Right. Hudson did reject it. I mean, that was the argument in Hudson. This was a voluntary dismissal. Under the statute, we had leave to refile within one year. And that was the argument that was made to the court. And the court, not unanimously, but held that, no, that does not trump the fundamental principles of claim splitting and res judicata. We are not going to read that one year to refile or the restatement provision as allowing you to do this. We're going to apply the res judicata principles. And equity, you know, there's also a mention of equity in counsel's brief. I just wanted to touch on it briefly. I mean, the restatement has six exceptions. And Hudson did accept those and say, well, if those apply, then possibly we don't do it. But there's no claim in this case that any of those exceptions applied. And as far as equity goes in rain, the ultimate result of your decision was that no recovery could be had for the fraudulent inducement of the bonds. In Hudson, no recovery could be had for the wrongful death of the plaintiff's son. Nothing like that here. A plaintiff has his day in court to still come for full recovery against the two physicians involved, against their groups, and has even got a hospital nurse named as a defendant. So we're nowhere, anywhere near within any equity exception for this. And so back to my study last night about is there any other definitions of what's a separate claim. Another one, Heinrich also says, if the claims rely on different common law doctrines. Well, again, clearly that's the case here. The actual agency claim is based on respondeat superior doctrine. And in Gilbert, you said we are going to apply, we're not going to create a separate rule, we're going to apply the separate doctrine of apparent authority to apparent agency claims within the hospital context. Even the cases he's relying on are cases where an allegation within a theory was dismissed or ruled out or resolved. Pagentini, Hall, Curtis, those are all cases where an allegation of negligence was removed, but the theory of negligence is still there. The theory of strict liability is still there. Here, the theory of apparent agency, it's gone. I mean, these are two separate staircases. You can't even take them both. Either you're an employer or an employee or you're not. And if you're not, then you've got to come over and try to do it under apparent agency, under the holding out. So to me, this is as clear cut, if you will, an application of Hudson and Rain as really as we could have. Even Pagentini, their definition was, well, it has to involve a separate theory of recovery. I think Hall had that same language. And again, we certainly have that here. There are two separate theories. They don't really even overlap as Wilflin, Watten, and negligence do in Hudson. So as I say, I think with all due respect, this is a pretty straightforward application. In Hudson, you said once you understand Rain and the principles of Rain, it's a pretty straightforward application here. I would submit it's just as straightforward in this case. If there's no further questions, I'll stand on my argument and on my briefs. Thank you, Mr. Griffin. Thank you. In light of Mr. Griffin's briefness, I will try to be just as brief as well. Mr. Griffin referred to a theory of agency, and I think that's where we part paths. Mr. Griffin referred to it as a theory of apparent agency or a theory of actual agency. They're different theories, but the overall theory, if you will, is just one of agency, principal agent. And that's, I think, where we part ways. And that may be the distinction between the two that's critical to the Court's analysis. If the defense is right here, it would be ironic that the Court would be finding that there is one claim against the doctors for the misconduct, but two claims against the hospital for derivative conduct. My question is, how does derivative conduct get multiplied? How does one claim against the actual party committing the conduct all of a sudden blossom into two claims when we talk about derivative conduct? I'm not aware of any other situation that that would occur, and I think that alone illustrates that the plaintiff's definition of claim here is probably the one that, in the bottom line, is easier to support logically, unless the Court has further questions. We obviously ask that the certified question be answered other than how the appellate court answered it. Thank you. Thank you, counsel. Case number 112898, Wilson v. Edward Hospital, is taken under advisement as agenda number nine.